HARVEY L. WHITNEY *vs.* JOHN A. KELLEY, *et al.*, and JOHN $\begin{array}{cc} 67 & 377 \\ 100 & 427 \end{array}$ McCANN, trustee.

Penobscot.   Decided May 31, 1877.

*Assignment.   Trustee process.*

A bill of sale of all stock in trade and an assignment of debts due to an insolvent firm, given to one who knows of the insolvency for the purpose of enabling the assignee to pay a stipulated percentage to certain creditors of the firm, who agree to receive such percentage in full of their claims, contravenes the policy of R. S., c. 70, regulating assignments for the benefit of creditors, and constitutes a legal fraud upon the creditors who are not parties to the arrangement, and they may reach the property of their debtor in the hands of such assignee by trustee process.

Doubtful and indefinite statements by a trustee as to the quantity and value of property in his hands belonging to the principal defendant, with whom it is his business to keep an exact account, will be construed most strongly against the trustee, and he will be charged unless his disclosure clearly shows him entitled to be discharged.

ON REPORT.

ASSUMPSIT on account annexed for $127.75, the amount of a bill for silk, sold by plaintiff, a resident of Boston, to principal defendants, residents of Bangor, doing business under the name of Kelley & Martin as tailors and dealers in ready-made clothing, furnishing goods, &c.   The account was dated, October 22, 1874, and service was made on the trustee, October 22 and 30, 1874, as trustee to the firm and to Kelley individually.   The case was submitted to the law court on the trustee disclosure, there being no question as to the liability of the principal defendants; the trustee to be charged or discharged as the court may determine.

*O. Gilmore*, for the plaintiff.

*J. Varney*, for the trustee.

BARROWS, J.   The alleged trustee, having a claim of $2200 against the principal defendants, a firm of tailors and clothing dealers, in part for money lent, in part for endorsing their paper not then matured, in July, 1873, knowing that they were insolvent and that their stock had been attached, under an agreement with their principal creditors, representing nearly all their indebt-

edness, that he would pay and they would receive 30 per cent. in full for their claims, took an absolute bill of sale of the entire stock and an assignment of the debts due to the principal defendants and went into possession, (the attaching creditors releasing their attachments) and since that time he has carried on the business, employing both the defendants for some months and one of them, to the time of his disclosure, as his cutter, who receives as compensation half the profits of the concern. The alleged trustee is himself engaged in another kind of business and conducts this entirely through his agents.

He has paid, according to his agreement, to the creditors who were parties to the arrangement their 30 per cent., together with considerable bills of cost, and an additional sum of $300 to one of them who visited Boston and Portland to get the assent of creditors to this disposition of the debtors' property.

The trustee's counsel says that he was "induced to take the assets and make the 30 per cent. payments to the other creditors, if enough of the creditors would agree to take it, so that the outstanding debts would in the aggregate be too small to put the estate in bankruptcy." We see no reason to doubt it; and just as little reason to doubt that it operated a legal fraud upon the creditors, not parties to it, whether actual fraud was intended or not, and that the transaction must be inoperative as against them, and that it constituted an intrusting and depositing of the goods, effects and credits of the principal defendants in the hands and possession of the trustee, so that they could not be come at to be attached.

Chapter 70 of the revised statutes prescribes the course to be taken to make a valid assignment for the benefit of creditors, and calls for a proportional distribution of all the debtor's estate, real and personal, except what is by law exempt from attachment, among all his creditors becoming parties thereto, and makes public notice indispensable, so that all may have an opportunity to become parties if they wish, and provides for a bond to be given by the assignee to secure a faithful and just distribution, and requires the proceedings to be under oath. When these requisites are complied with, the assignee is exempted from

trustee process at the instance of a creditor, not a party, for six months, and for eighteen months provided the judge of probate with whom he is to settle his accounts sees fit to extend the time so far.

In the case before us the requirements of the statute were entirely disregarded. It does not appear that the plaintiff had any notice, or an opportunity to avail himself of the limited dividend which other creditors accepted. His claim to share with the rest was ignored; and the alleged trustee undertook to make a distribution which should be satisfactory to himself and such of the creditors as had agreed to receive 30 per cent. of their claims.

Non-assenting creditors cannot be thus postponed if they seasonably enforce their claims. The scheme is fraught with similar mischiefs and opportunities for fraud to those commented upon by the court in *Hooper* v. *Hills & trustee,* 9 Pick., 435, besides being in contravention of our statute regulating assignments.

It must depend for its perfect success upon securing the assent of all the creditors. If a distribution of a failing debtor's property is to be made it must be done either in conformity to law, or with the assent of all parties interested. The law cannot recognize the right of one of the creditors or any other man to speculate upon the assets of one whom he knows to be insolvent and upon the fears of the insolvent's creditors in this manner.

Non-assenting creditors may pursue their debtor's property in the hands of an assignee thus constituted. See *Wyles* v. *Beals,* 1 Gray, 233. *Edwards* v. *Mitchell, id.,* 239. The statements of the alleged trustee as to the actual value of the property which he received from the principal defendants are quite uncertain, and as to the amount in his hands still unsold totally indefinite. The burden of discharging himself by clear and definite statements devolves upon the trustee who has it in his power by keeping proper accounts to show the exact state of affairs between himself and the principal defendants. If, instead of rendering such accounts, he makes only doubtful and indefinite statements, he will be charged. *Lamb* v. *Franklin Manuf. Co.,* 18 Maine, 187, 188. *Toothaker* v. *Allen,* 41 Maine, 324, 325.

Upon the disclosure before us we think the trustee should be charged for an amount equivalent to that of the judgment to be recovered by the plaintiff for debt and costs, and officer's fees on the execution.

*Trustee charged accordingly.*

APPLETON, C. J., WALTON, DICKERSON, VIRGIN and PETERS, JJ., concurred.